UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

TONY JOHNSON, an individual,

        Plaintiff,

    v.

DELIVERY DRIVERS, INC.; WAL-MART STORES DBA WAL-MART STORES EAST, LP; and DOES 1 THROUGH 20,

        Defendants.

No. 2:25-cv-3249 WBS AC

MEMORANDUM AND ORDER RE: DEFENDANT WAL-MART INC.'S MOTION TO COMPEL ARBITRATION

----oo0oo----

        Plaintiff Tony Johnson brought this action against defendants Delivery Drivers, Inc., and Wal-Mart Stores DBA Wal-Mart Stores East, LP ("Walmart"), alleging discrimination, harassment, and retaliatory conduct under the Fair Housing and Employment Act ("FEHA") and California Business and Professions Code § 17203.  (Docket No. 1-1 at 9-19.)  Walmart has moved to compel arbitration of all claims.  (Docket No. 6.)  Plaintiff opposes the motion.  (Docket No. 12 at 2.)

        At oral argument, both parties stipulated their

1

agreement to arbitration.  Plaintiff's counsel stated that the only remaining dispute was which ruleset was applicable to the arbitration, but when asked, conceded that this dispute should be resolved by the arbitrator.  For the following reasons, the court affirms that conclusion and will grant defendant's motion.

I.    Plaintiff's Employment and the Arbitration Agreement

Plaintiff was a delivery driver for Walmart's Spark Driver platform, "an app-based delivery platform that allows independent contractors to . . . deliver grocery and other general merchandise from Walmart's . . . stores to customers' homes."  (Declaration of Ashley O'Brien ("O'Brien Decl.") (Docket No. 6-1) ¶ 3.)  Plaintiff alleges that he was subjected to several instances of racial profiling and harassment by Walmart employees while working as a driver, and that Walmart "deactivated his account in retalia[tion] for making complaints about these incidents."  (Docket No. 1-1 at 6-9.)

When plaintiff began working as a delivery driver, he and Walmart entered into a "Non-Disclosure and Dispute Resolution Agreement" which required resolution of "all disputes on an individual basis in final and binding arbitration . . . unless [plaintiff] opt[ed] out of arbitration."  (Docket No. 6-1 ("the Agreement") at 7.)  Plaintiff does not dispute that he signed the agreement, nor that the agreement is governed by the Federal Arbitration Act ("FAA").

The FAA reflects "a liberal federal policy favoring arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011), and the Supreme Court has emphasized that arbitration agreements should be "enforce[d] . . . according to their terms."

2

Id.  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Taylor v. TA Operating, LLC, No. 2:22-cv-00947 WBS DMC, 2023 WL 171359, at *3 (E.D. Cal. Jan. 12, 2023) (citing Moses H. Cone Mem'l Hosp. v. Mercury Cost. Corp., 460 U.S. 1, 24-25 (1983).

Per the FAA, the district court's involvement in deciding the enforceability of arbitration agreements is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Huell v. Bevmo Holdings, LLC, No. 2:22-cv-01394 WBS AC, 2022 WL 16964106, at *2 (E.D. Cal. Nov. 16, 2022) (internal citation omitted).  Plaintiff did not dispute that the Agreement encompasses his claims, only that the Agreement is invalid because it is unconscionable.  (Docket No. 12 at 2-6.)

II.  Unconscionability

"Unconscionability has both a 'procedural' and a 'substantive' element."  Taylor, 2023 WL 171359, at *3 (citing Armendariz v. Found. Health Psychcare Servs., 24 Cal. 4th 83, 114 (2000)).  "Both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability."  Id.

a.  Procedural Unconscionability

Procedural unconscionability "arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice."  Poublon v. C.H. Robinson Company, 846 F. 3d 1251, 1260 (9th Cir. 2017) (internal citations omitted).  This is often the case when "the contract [is] one of

3

adhesion," that is, an agreement "imposed and drafted by the party of superior bargaining strength, [that] relegates to the subscribing party only the opportunity to adhere to the contract or reject it."  Id. (citing Armendariz, 24 Cal. 4th at 113.)

Plaintiff argued Walmart's Agreement was adhesive because its terms were "imposed as a mandatory condition of work," without negotiation, "with no ability to decline arbitration," and "without opportunity to consult counsel." (Docket No. 12 at 3.)  Plaintiff's arguments are meritless by the terms of the Agreement, which are clear and unambiguous.

The first page of the Agreement states that Spark Drivers agree to arbitrate their claims against Walmart, and contains an opt-out provision:

> **IMPORTANT: Please review this Agreement carefully**. This Agreement is a binding contract that addresses important legal issues. Entering into the agreement, including the **Arbitration Provision in Section II below**, will affect your legal rights. It is your sole responsibility to read and understand this Agreement and its **Arbitration Provision, WHICH REQUIRES THE PARTIES TO RESOLVE ALL DISPUTES ON AN INDIVIDUAL BASIS IN FINAL AND BINDING ARBITRATION TO THE FULLEST EXTENT PERMITTED BY LAW, UNLESS YOU OPT OUT OF THE ARBITRATION AS PROVIDED IN THE ARBITRATION PROVISION.**

(Agreement (Docket No. 6-1) at 7 (emphasis in original).)

That arbitration provision states that it "is not a mandatory component of this Agreement or Contractor's contractual relationship with Walmart," and that if a contractor wishes to opt out, they may do so "by notifying Walmart in writing" within

4

30 days of executing the agreement.  (Id. at 1.G.)

This court has previously held, in line with the well-established principle in the Ninth Circuit, that an arbitration agreement is not procedurally unconscionable when the plaintiff "had the opportunity to opt out."  Harper v. Charter Communications, LLC, No. 2:19-cv-01749 WBS DMC, 2019 WL 6918280, at *5 (E.D. Cal. Dec. 19, 2019) (citing Kilgore v. KeyBank, Natl. Ass'n, 718 F. 3d 1052, 1059 (9th Cir. 2013); see also Alvarez v. T-Mobile USA, Inc., No. 2:10-2373 WBS, 2011 WL 6702424, at *6-7 (E.D. Cal. Dec. 21, 2011) ("[T]here is no contract of adhesion if the contract provides the party with less bargaining power a meaningful opportunity to opt-out of arbitration.") (citing Circuit City Stores v. Ahmed, 283 F. 3d 1198, 1199 (9th Cir. 2002)); Mohamed v. Uber Techs., Inc., 848 F. 3d 1201, 1211 (9th Cir. 2016) ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it.").

Plaintiff was provided with a meaningful opportunity to opt out of arbitration and did not do so.  The arbitration provision was designed to be conspicuous: it was written in bold, underlined font, in all capital letters, and provided a clear procedure for plaintiff to opt out if he so chose.  Plaintiff's argument that "arbitration was forced as a condition of accessing work" is thus plainly contradicted by the Agreement's terms. (Docket No. 12 at 4.)

The court further observes that three district court decisions -- two in this circuit -- have considered this exact Agreement and concluded that it is not procedurally unconscionable because of the opt out provision.  See Shelton v.

5

_Delivery Drivers, Inc._, No. 8:22-cv-02135 DOC, 2023 WL 2629027, at *3 (C.D. Cal. Jan. 31, 2023) (finding the Agreement "procedurally sound" because "[p]laintiff had the choice to opt out"); _Shugars v. Walmart, Inc._, No. 24-cv-02765 EKL, 2025 WL 786348, at *6 (N.D. Cal. Mar. 12, 2025) (same); _Medeiros v. Walmart, Inc._, No. 1:24-cv-12114, Dkt. 32 at 8 (D. Mass. Feb. 25, 2025) (same).

Plaintiff's contention that the Agreement provided no opportunity to consult with counsel is similarly contradicted by the plain language of the Agreement, which provides that "Contractor has the right to consult with private counsel of Contractor's choice with respect to any aspect of this Agreement, or any claim that may be subject to, this Arbitration Provision." (Agreement (Docket No. 6-1) at 1.H.)

The Agreement provides a meaningful opportunity to opt out and to consult with counsel and is therefore not procedurally unconscionable.[1]  Given that a finding of unconscionability requires that an agreement is "both procedurally and

---

[1]   Plaintiff also argued that the Agreement's delegation clause is unconscionable.  (Docket No. 12 at 5.)  In doing so, he incorporated his procedural unconscionability arguments discussed above, stating that "the exact same procedural oppression" applies to the delegation clause.  (Docket No. 12 at 5.)  As plaintiff made no effort to specify his delegation clause arguments, the court's finding that the Agreement is procedurally conscionable necessarily applies to the Agreement's delegation clause.  _See_ _Mohamed_, 848 F. 3d at 1210-11 ("[T]he existence of a meaningful right to opt-out of [arbitration] necessarily renders [the arbitration clause] (and the delegation clause specifically) procedurally conscionable as a matter of law."); _see also_ _Taylor_, 2023 WL 171359, at *9-10 (granting a motion to compel where plaintiff "failed to adequately challenge the delegation clause specifically" and there being "no reason to conclude that the delegation clause is unenforceable" (emphasis in original)).

substantively unconscionable," the court need not consider plaintiff's substantive unconscionability arguments.  Poublon, 846 F. 3d at 1260 (citing Sanchez v. Valencia Holding Co., LLC, 353 P. 3d 741, 820 (2015)); see also Shugars, 2025 WL 786348, at *7 ("Because no degree of procedural unconscionability is present, the Court does not reach Plaintiffs' arguments regarding substantive unconscionability."); Shelton, 2023 WL 2629027, at *4 (same); Circuit City Stores, 283 F. 3d at 1199 ("An agreement to arbitrate is unconscionable only if it is both procedurally and substantively unconscionable." (emphasis added)).

III. Public Injunctive Relief Exception

Plaintiff briefly argued that the Agreement is also unenforceable because it "bar[s] representative or public injunctive relief," which violates the principle announced in McGill v. Citibank, 2 Cal. 5th 945 (2017), that pre-dispute agreements waiving the right to public injunctive relief are unenforceable.  (Docket No. 12 at 5.)  This argument is unavailing because plaintiff is not seeking representative or public injunctive relief.[2]

McGill defines public injunctive relief as "relief that by and large benefits the general public and that benefits the plaintiff, if at all, only incidentally and/or as a member of the general public."  2 Cal. 5th at 89 (internal citations and quotation marks omitted).  Private injunctive relief, on the other hand, is "relief that primarily resolves a private dispute

---

[2]    The court addresses plaintiff's public injunctive relief argument below; as to representative relief, plaintiff does not bring a class action, nor does he allege anywhere in his complaint that he is seeking to certify a class.

between the parties and rectifies individual wrongs, and that benefits the public, if at all, only incidentally." Id. (internal citations and quotation marks omitted).

Plaintiff argued that his request for injunctive relief, "enjoining Defendants from engaging in the unlawful business practices complained herein" constitutes public injunctive relief. (Docket No. 1-1 at 21.) But "[m]erely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for public injunctive relief." Ajzenman v. Office of Commissioner of Baseball, No. 20-cv-3643 DSF JEMX, 2020 WL 6037140, at *6 (C.D. Cal. Sept. 14, 2020); see also Wright v. Sirius XM Radio Inc., No. 16-cv-01688 JVS, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017) ("[V]ague, generalized allegations [seeking 'an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices'] do not request public injunctive relief.").

Aside from this cursory reference in his prayer for relief, plaintiff made no other attempt, and cited no authority, to argue he is seeking public injunctive relief. The court does not see how he could do so, as his complaint makes no reference to Walmart's business practices as they affect the "public" -- a word which he never uses -- or indeed anyone other than himself. (See generally Docket No. 1-1.) All the conduct complained of relates to plaintiff alone, which suggests this action is aimed at "rectif[ying] individual wrongs" inherent to requests for private injunctive relief. McGill, 2 Cal. 5th at 955.

Because plaintiff failed to establish that the

8

Agreement is unconscionable or otherwise unenforceable, and because the parties have now agreed to submit this dispute to arbitration, IT IS HEREBY ORDERED that Walmart's motion to compel arbitration (Docket No. 6) be, and the same hereby is, GRANTED; and IT IS FURTHER ORDERED that this case is STAYED pending arbitration.

The Clerk shall close this file administratively, subject to it being reopened upon the application of either party after arbitration has been fully completed.

Dated:   February 2, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE